IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DARIUS PENNINGTON,<br><br>    Defendant. | CRIMINAL ACTION NO.<br>1:19-CR-00455-WMR-RDC-1 |

# **FINAL REPORT AND RECOMMENDATION**

This case is before the Court on Defendant Darius Pennington's Motion to Suppress Statements. [Doc. 105]. This Court held an evidentiary hearing to receive evidence related to this motion on January 18, 2022. (R. 131). On February 11, 2022, Mr. Pennington filed a post-hearing brief in support of his motion. [Doc. 135]. The Government filed its response on February 22, 2022. [Doc. 137]. Following review of Defendant's pleadings, the Government's response, and the transcript of the evidentiary hearing ([Doc. 136] (hereafter "Tr."), this matter is now ripe for judicial review.

## Factual and procedural background

Mr. Darius Pennington has been named in a three-count Superceding Indictment charging him with possession of a firearm by a prohibited person in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(Count 1), aiding and abetting others by possessing with intent to distribute at least 100 grams of heroin and less than 500 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(i)(B), 841(b)(1)(D) and 18 U.S.C. §2 (Count 2) and possession of a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. §924(c)(1)(A)(i) (Count 3). [Doc. 20]. The charges described in this Indictment arise from a narcotics investigation conducted by federal agents and task force officers with the Drug Enforcement Administration ("DEA"). (Tr. at 6-7). On October 31, 2019, these law enforcement officers (all of whom were armed) executed a federal search warrant at a home located at 3128 Sewell Mill Road in Marietta, Georgia. (*Id.* at 6). Six members of the Clandestine Lab Team entered the residence to secure the property while the remaining members surrounded the perimeter of the home. (*Id.* at 7-8). Once the home was secured, DEA agents began conducting a search of the interior. (*Id.* at 34-35). Mr. Pennington and a female companion were inside the residence when the officers arrived. (*Id.* at 7-8). Mr. Pennington was discovered in the garage where he was handcuffed by members of the entry team. (*Id.* at 8). His companion was apprehended in the master bedroom located at the rear of the home and escorted to the living room. (*Id.* at 7-8). She and Mr. Pennington were both handcuffed and detained in the living room as the search warrant was executed. (Tr. at 7-8).

Task Force Officer("TFO") David Noe entered the residence after it had been

secured. (Tr. at 23). He testified that he and DEA Special Agent Hector Cartagena escorted Mr. Pennington to the master bedroom in order to conduct an interview. (*Id.* at 24-25).[1] Officer Noe explained that he chose to conduct the interview in the privacy of the master bedroom to prevent the woman from overhearing their conversation, especially if Mr. Pennington agreed to cooperate. (*Id.* at 31- 32).

After escorting Mr. Pennington to the master bedroom, TFO Noe recited the *Miranda* warnings. (Tr. at 9-11; Gov't Ex. 1).[2] Special Agent Cartagena was present,

---

[1] Mr. Pennington argues that TFO Noe's testimony regarding the location of the interview is unreliable because he initially stated that the interview was conducted in the living room rather than the master bedroom where narcotics were discovered. [Doc. 135 at 3-4]. This contradiction, he submits, undermines the Officer's credibility and supports his contention that the interview was conducted in a coercive environment. [*Id.* at 9]. The Government disagrees with this assessment, noting that Officer Noe clarified his statements regarding the location of the interview and that the totality of his testimony establishes that the interview occurred without intimation or coercion. [Doc. 137 at 10].

The Eleventh Circuit has held that credibility determinations "are typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses." *United States v. Ramirez-Chilel*, 289 F.3d 744, 747 (11th Cir. 2002); *Viehman v. Schweiker*, 679 F.2d 223, 227-28 (11th Cir. 1982). Upon careful review of Officer Noe's testimony and this Court's observation of his demeanor during the evidentiary hearing, the Undersigned finds he was a credible witness and that his recollection of the events occurring during the interview was reliable. See also, *United States v. Yusuff,* 96 F.3d 982, 986 (7th Cir. 1996)"[M]inor inconsistencies in the police [officers' testimonies] do not undermine their credibility in any significant fashion.").

[2] The waiver of rights form (DEA Form 13) read by TFO Noe states: "Before we ask you any questions, you must understand: You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a

3

as were two agents who were actively searching the master bedroom. (Tr. at 16, 26). According to TFO Noe, Mr. Pennington stated that he understood his *Miranda* rights and agreed to speak to them without the assistance of counsel. (*Id.* at 10-12). During the interview that followed, Mr. Pennington made several incriminating statements revealing his involvement in the offenses that preceded his arrest. (*Id.* at 16-17). He readily admitted that he was a habitual marijuana user and had consumed marijuana throughout the previous evening. (*Id.* at 2, 30, 36). Additionally, he revealed that he was the owner of two vehicles parked on the property and was a co-owner of an automotive business with another man. (*Id*. at 16). As Mr. Pennington continued to respond to TFO Noe's questions, one of the agents discovered a large bag containing marijuana and another bag containing heroin. (*Id.*). Both packages were hidden in the master bedroom closet. (*Id.* at 16, 26). TFO Noe also noticed an ashtray near the bed that contained several remnants of marijuana cigarettes. (*Id.* at 30-31). Mr. Pennington admitted that the marijuana belonged to him, but denied that he possessed the heroin or a firearm discovered in a separate location within the residence. (*Id*. at 29-30).

---

lawyer for advice before we ask you any questions and to have a lawyer with you during questioning. If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish. Do you understand? Are you willing to answer some questions?" (Gov't Ex. 1).

4

Following the interview, Mr. Pennington was escorted back to the living room. (Tr. at 32).

TFO Noe testified that neither he nor the officers who were searching the master bedroom displayed their weapons or threatened Mr. Pennington during the interview. (Tr. at 13-14). He also stated that Mr. Pennington appeared to understand his questions and "answered all the questions as if he wanted to be helpful to us or to me." (*Id.* at 13 ). While the officers were completing their search, Officer Noe asked Mr. Pennington additional questions. All of the questions posed to Mr. Pennington occurred during a period spanning 45 to 60 minutes. (*Id*. at 12, 34).

Once the search was completed, Mr. Pennington was transported to the United States Courthouse for processing in advance of his initial appearance before a federal magistrate judge. (Tr. at 16-17). His companion was released at the scene after she was interviewed. (*Id.* at 32). As Mr. Pennington was being processed in a secured area of the courthouse, TFO Noe asked him to identify the location of the dealership where he obtained his vehicles; a verbal exchange Officer Noe described as "a friendly conversation." (*Id*. at 17-19 ). Mr. Pennington was subsequently named in a criminal complaint and appointed counsel by Magistrate Judge Christopher C. Bly. (R. 2).

On November 12, 2019, he was named in a one-count Indictment charging him with unlawful possession of a firearm by a prohibited person in violation of 18 U.S.C. §§922(g)(1) and 924(e). [Doc. 11]. The Superceding Indictment, the operative prosecutorial instrument, was returned on January 14, 2020. [Doc. 20]. This new three-count Indictment alleges two additional offenses related to the narcotics seized during the search. *Id.*

### The parties' contentions

In Mr. Pennington's Motion to Suppress, he submits that the statements obtained by TFO Noe are inadmissible because they were "involuntary, resulting from overly coercive police tactics in violation of the Fourteenth Amendment." [Doc. 135 at 1]. He also claims that the setting of the interview was overly coercive, the circumstances surrounding the discovery of the narcotics forced him to confess, and his marijuana consumption established that he did not have the capacity to voluntarily waive his *Miranda* rights. [*Id.* at 9-10]. These "significant coercive elements," he avers, created an environment where he felt "involuntarily compelled [to] help the Police." [*Id.* at 10]. Because these factors undermined his ability to "adequately communicate his thoughts," he submits that his statements were unlawfully obtained. [*Id.* at 11-12].

6

The Government refutes these claims, arguing that "there is no evidence of any coercion that affected [the Defendant's] free choice to waive his *Mirada* rights." [Doc. 137 at 12]. It submits that the totality of the circumstances, including Mr. Pennington's "repeated decision to engage with agents – after lengthy breaks and in multiple locations – reflects a conscious choice to speak." [Doc. 137 at 15]. His failure to produce evidence substantiating his inability to knowingly and intelligently waive his right to remain silent, the Government argues, renders his motion meritless. [*Id.* at 20].

## Legal Authority

Before the Government is permitted to introduce a suspect's uncounseled statement made during custodial interrogation, it must show that the suspect made a voluntary, knowing and intelligent waiver of his privilege against self-incrimination and his right to counsel. *Miranda v. Arizona*, 384 U.S. 436 (1966); *Missouri v. Seibert*, 542 U.S. 60, 0, 608 n.1 (2004); *United States v. de la Fuente*, 548 F.2d 528, 533 (5th Cir. 1977) ("[I]f a defendant shows that a confession was obtained while he was under custodial interrogation, the government then has the burden of proving that the

defendant voluntarily waived his privilege against self-incrimination"); ³ *United States v. Bengivenga*, 845 F.2d 593, 596 (5th Cir.1988); *Dunkins v. Thigpen,* 854 F.2d 394, 398 (11th Cir. 1988).  This showing has two distinct aspects: (1) relinquishment of the right must have been the product of a suspect's free and deliberate choice (rather than intimidation, coercion, or deception) and (2) waiver must have been made with the full awareness of both the rights being abandoned and the consequences of the decision to abandon those rights. *Dunkins*, 854 F.2d at 398 (citing *Moran v Burdine*, 475 U.S. 412 (1986)); See, *Edwards v. Arizona*, 451 U.S. 477, 482 (1981)(it is impermissible for authorities "to reinterrogate an accused in custody if he has clearly asserted his right to counsel.").

In *Miranda*, the Supreme Court recognized that custodial interrogations, by their very nature, generate "compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Miranda*, 384 U.S. at 467. To prevent any compulsion, and protect the Fifth Amendment privilege against self-incrimination, *Miranda* imposed on law enforcement officers an obligation to follow certain procedures in this context. Specifically, prior to the initiation of questioning, they must fully apprise the suspect

---

³  In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions rendered by the Fifth Circuit before October 1, 1981.

of the government's intention to use his statements to secure a conviction, and must inform him of his rights to remain silent and to "have counsel present . . . if [he] so desires." *Id.* at 468-70. Although the Supreme Court has held that the police do not have to recite the *Miranda* warnings in a talismanic fashion, the warnings must not be misleading. *California v. Prysock*, 453 U.S. 355 (1981). <u>See</u>, *e.g., United States v. Dohm*, 618 F.2d 1169, 1175 (5th Cir. 1980) (*en banc*) (holding magistrate's warning "you may say something that might hurt you in the future" to defendant testifying without counsel at bail bond hearing insufficient for valid *Miranda* waiver); *United States v. Womack,* 542 F.2d 1047 (9th Cir. 1976) (holding waiver invalid where law enforcement officers' conduct negated their assertion that defendant had a right to counsel).

Beyond this duty to inform, *Miranda* requires that the police respect the accused's decision to exercise the rights outlined in the warnings. "If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, [or if he] states that he wants an attorney, the interrogation must cease." *Miranda*, 384 U.S. at 473-74.  A defendant may waive effectuation of the rights conveyed in the warnings provided the waiver is made voluntarily, knowingly and intelligently. *Id.* at 444. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of

9

comprehension may a court properly conclude that a suspect's *Miranda* rights have been waived. *Moran*, 475 U.S. at 421; *Fare v. Michael C.*, 442 U.S. 707, 725 (1979); *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973); *United States v. Barbour*, 70 F.3d 580, 585 (11th Cir. 1995); See also, *North Carolina v. Butler*, 441 U.S. 369, 374-75 (1979).

Aside from the dictates of *Miranda*, before a confession is admissible, the Court must find that it was voluntarily made. *Jackson v. Denno*, 378 U.S. 368, 378 (1964) ("[A] defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession[.]"). Whether a statement was voluntarily given must be examined in light of the totality of the circumstances, See, *Schneckloth,* 412 U.S. at 226; *United States v. Thompson*, 422 F.3d 1285, 1295 (11th Cir. 2005); *Hubbard v. Haley*, 317 F.3d 1245, 1252 (11th Cir. 2003), and includes factors such as whether: (1) law enforcement officers provided *Miranda* warnings, *Beckwith v. United States*, 425 U.S. 341, 348 (1976); (2) the interrogation lasted for a lengthy period of time, *Davis v. State of North Carolina*, 384 U.S. 737, 752 (1966); *Thompson*, 422 F.3d at 1296; (3) the defendant was mature, *id*.; (4) law enforcement officers relied on misrepresentations that induced the incriminating statements, *Frazier v. Cupp*, 394 U.S. 731, 739 (1969); *United States v. Mitchell*, 966 F.2d 92, 100 (2nd Cir. 1992); (5) law enforcement officers used force

and threats of force, *United States v. Thompson*, 422 F.3d 1285, 1296 (11th Cir. 2005); and (6) law enforcement officers made promises to induce the confession, *Thompson*, 422 F.3d at 1296; *United States v. Gonzalez*, 71 F.3d 819, 828 (11th Cir. 1996) overruled on other grounds by *Arizona v. Gant,* 556 U.S. 332 (2009). This totality of the circumstances test directs the Court ultimately to determine whether a defendant's statement was the product of "an essentially free and unconstrained choice." *United States v. Garcia,* 890 F.2d 355, 360 (11th Cir. 1989); *Hubbard v. Haley,* 317 F.3d 1245, 1252 (11th Cir. 2003). However, while the Eleventh Circuit has "enumerated a number of (non-exclusive) factors that may bear on the issue of voluntariness, the absence of official coercion is a *sine qua non* of effective consent. . . ." *Gonzalez,* 71 F.3d at 828 (citations omitted)*.* In other words, courts examine whether the interview was coercive. *id*.; See also*, Thompson*, 422 F.3d at 1296 ("Government coercion is a necessary predicate to a finding of involuntariness under the Fifth Amendment."). Accordingly,"'[t]he government bears the burden of proving ... that the consent was not a function of acquiescence to a claim of lawful authority but rather was given freely and voluntarily.'" *United States v. Hildago*, 7 F.3d 1566, 1571 (11th Cir.1993) (quoting *United States v. Blake*, 888 F.2d 785, 798 (11th Cir. 1989). With these concepts in mind, the Undersigned turns to the errors alleged by Mr. Pennington.

### Discussion

In the case at bar, Mr. Pennington avers that the agents' discovery of the narcotics at the same time and in the same area where he was interrogated created a coercive environment culminating in the involuntary waiver of his *Miranda* rights. [Doc. 135 at 8-9]. The Government disputes this assertion, arguing that TFO Noe's testimony clearly establishes that his statements were not the product of coercion. [Doc. 137 at 1]. It argues that the evidence proves that neither Officer Noe, nor any other officers, yelled at Mr. Pennington, threatened him or made promises to induce him to speak. [*Id.* at 12-13]. The Government also emphasizes that the law enforcement officers' weapons were holstered throughout the interview and that the "conversational tone" of the encounter undermines Mr. Pennington's claim that the officers "overbore [the Defendant's] will and coerced him into answering questions." [*Id.* at 14]. This Court agrees. The fact Mr. Pennington was interviewed during the execution of the search warrant does not – in itself – establish that the environment was coercive See, *United States v. Barry*, 479 Fed. App'x 297, 299 (11th Cir. 2012) (*per curiam*)(unpublished); *United States v. Ross*, 510 F.3d 702 (7th Cir. 2007)(where court found defendant's statements were not involuntary although several armed law enforcement officers were inside defendant's apartment at the time of his confession,

only two of them interviewed him and he was properly advised of his *Miranda* warnings).

Moreover, sufficiently coercive conduct normally involves subjecting the accused to an exhaustingly long interrogation, application of physical force or the threat of force, or the making of a promise that induces the accused to confess. See, *Colorado v. Connelly*, 479 U.S. 157 (1986); *United States v. Castaneda-Castaneda*, 729 F.2d 1360, 1362-63 (11th Cir. 1984).  Even isolated incidents of police deception, *id*; *Frazier v. Cupp*, 394 U.S. 731, 739 (1969), and discussion of realistic penalties for cooperative and non-cooperative defendants, See, *U.S. v. Mendoza -Cecelia*, 963 F.2d 1467, 1475 (11th Cir. 1992); *United States v. Nash*, 910 F.2d 749, 753 (11th Cri. 1990), are normally insufficient to preclude free choice.

In the instant case, Mr. Pennington's claims of coercion are simply unsupported by the record. The interview conducted in the master bedroom only lasted a few minutes. The agents did not use any physical force against him, nor did they make any threats or promises to influence his decision to surrender his rights. Although armed, they never removed their weapons from their holsters. These facts, along with Officer Noe's explanation of his and his fellow officers' non-confrontational conduct, establish that Mr. Pennington voluntarily waived his right to remain silent without coercion. See, *Barry*, 479 Fed. App'x at 299 (11th Cir. 2012)(where court concluded

that "although several officers were present executing search warrants prior to each of [defendant's] interviews, his statements were voluntary because, during each brief interview, [defendant] was not threatened or physically detained. The officers did not brandish their weapons, and [defendant] was interviewed calmly in a private area. Under the totality of the circumstances, the evidence supports a conclusion that [defendant's] will was not overborne merely by the police presence prior to his interviews.").

Mr. Pennington also argues that the waiver of his *Miranda* rights was unlawfully obtained because his consumption of marijuana "just hours prior to the early morning search" prevented him from "adequately communicat(ing) his thoughts." [Doc. 135 at 11]. The Government disputes this assertion as well, submitting that there is no evidence to substantiate his claim that he was under the influence of controlled substances when officers arrived at the residence, or that he was impaired in any way during the interview. [Doc. 137 at 17].

"[F]ull comprehension of the rights to remain silent and request an attorney" are required to establish that a defendant's waiver of his *Miranda* rights was voluntary. *Moran*, 475 U.S. at 427. As previously explained, the government must prove by a preponderance of the evidence that the defendant made a knowing, voluntary and intelligent waiver of his *Miranda* rights. And although a written waiver

14

"'is usually strong proof of the validity of that waiver, [it] is not inevitably either necessary or sufficient to establish waiver.' " *United States v. Rafael Guerrero*, 296 Fed. App'x 764, 766 (11th Cir. 2008) (quoting *Butler*, 441 U.S. at 373). However, a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained. *Miranda*, 384 U.S. at 475. Further, "[t]he determination of whether there has been an intelligent waiver ... must depend in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938); See, *Miranda,* 384 U.S. at 475, (applying *Johnson v. Zerbst* standard to waiver of *Miranda* rights); *Miller v. Dugger, 838 F.2d at 1537-398* (same).

In the case at bar, the Government's arguments are well taken. Prior to making his incriminating statements, Mr. Pennington was fully advised of his *Miranda* rights. During the interview, he acknowledged that he understood his rights and was willing to submit to questioning from the agents. The session was conducted in conversational and non-confrontational tones, with Mr. Pennington coherently describing his conduct that preceded his arrest and the nature of his automotive business. There is no indication that he was unable to comprehend Officer Noe's questions or the nature of the rights he chose to forfeit. However, even if he was experiencing some residual

15

effects of his marijuana use, that possibility alone would not render his statements inadmissible. See, *United States v. Smith*, 322 Fed. App'x 876, 878 (11th Cir. 2009) (*per curiam*) (unpublished) (where court found that even though the defendant did not execute a formal *Miranda* waiver, "he voluntarily spoke to officers and made consistent statements, both at the scene and at the jail. Although [defendant] had been intoxicated, at least three hours elapsed between the car accident and the start of the jail interview…and [defendant] noted that officers had already read his rights to him, [and he] appropriately responded to questions.") See e.g., *United States v. George*, 987 F.2d 1428, 1430-31 (9th Cir. 1993) (finding that the defendant voluntarily waived his *Miranda* rights despite pain because he responded coherently to questions, gave responsive answers, and was not unconscious or incoherent during questioning, noting that "a defendant can voluntarily waive his *Miranda* rights even when he is in the hospital, on medication, and in pain")(gathering authority) and *United States v. Martin,* 781 F.2d 671, 673–74 (9th Cir.1985)(holding statements voluntary even though defendant was under the influence of Demerol, a pain killer, and still experiencing pain).

In consideration of the totality of these particular circumstances, the Government has established by a preponderance of the evidence that Mr. Pennington knowingly,

voluntarily and intelligently waived his *Miranda* rights. Accordingly, the Undersigned recommends that Mr. Pennington's Motion to Suppress be **DENIED.**

## CONCLUSION

For the reasons stated above, this Court **RECOMMENDS** that Mr. Pennington's Motion to Suppress Statements be **DENIED**. [Doc. 105]. Having now addressed all referred pretrial matters relating to Mr. Pennington and having not been advised of any impediments to the scheduling of a trial as to him, this case is **CERTIFIED READY FOR TRIAL**.

**IT IS SO RECOMMENDED** this 21st day of March, 2022.

                                                        REGINA D. CANNON
                                                       United States Magistrate Judge